IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER LUDLOW,<br><br>       Plaintiff,<br><br>v.<br><br>NORTHWESTERN UNIVERSITY, MORTON SCHAPIRO, individually, ALAN CUBBAGE, individually, LAUREN LEYDON-HARDY, individually, JENNIFER LACKEY, individually and JOAN SLAVIN, individually.<br><br>       Defendants. | Case No. :<br><br>**Trial by Jury Demanded** |

## COMPLAINT AT LAW

COMES NOW the Plaintiff, by and through his attorneys, The Case Law Firm LLC, and for his Complaint at Law against Defendants states and alleges as follows:

### Jurisdictional Statement

1.    Plaintiff Peter Ludlow (hereinafter "Plaintiff") is a resident of Chicago, Cook County, Illinois and was at all relevant times a professor in Defendant Northwestern University's Philosophy Department.

2.    Defendant Northwestern University ("Defendant Northwestern") is a university which receives federal funding and which is qualified and doing business in Evanston, Cook County, Illinois.

3.    Defendant Morton Schapiro ("Defendant Schapiro") is a resident of Evanston, Cook County, Illinois and was at all relevant times President of Defendant Northwestern.

4. Defendant Alan Cubbage ("Defendant Cubbage") is a resident of Evanston, Cook County, Illinois and was at all relevant times Vice President of University Relations for Defendant Northwestern.

5. Defendant Lauren Leydon-Hardy ("Defendant Leydon-Hardy") is a resident of Massachusetts and was at all relevant times a PhD student in Defendant Northwestern's philosophy department.

6. Defendant Jennifer Lackey ("Defendant Lackey") is a resident of Evanston, Cook County, Illinois and was at all relevant times a professor in Defendant Northwestern's philosophy department.

7. Defendant Joan Slavin ("Defendant Slavin") is a resident of Evanston, Cook County, Illinois and was at all relevant times Director of the Sexual Harassment Prevention Office for Defendant Northwestern.

8. Jurisdiction is conferred on this Court by the above-named statutes, as well as by 28 U.S.C. § 1331 and § 1367. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) and (c).

**Factual Allegations**

9. In or around February of 2012, a student at Defendant Northwestern, Yoona Ha (hereinafter "Ha"), made an internal complaint against Plaintiff asserting numerous false allegations, including that he had made inappropriate sexual advances toward her.

10. Defendant Northwestern's Director of Sexual Harassment Prevention, Defendant Joan Slavin, conducted a flawed and one-sided investigation into Ha's complaint during which she interviewed Ha and Plaintiff, but did not inform Plaintiff of the charges against him and

2

refused to accept vital pieces of evidence (including eyewitness testimony and security videos) which he offered to provide. Plaintiff denied Ha's allegations of sexual harassment and assault.

11. As part of this investigation, Defendant Slavin interviewed Defendant Jennifer Lackey, a female professor in Defendant Northwestern's Philosophy Department, even though Defendant Lackey knew nothing of Ha's allegations. Despite this, Defendant Lackey told Defendant Slavin that she "believed" that Plaintiff had had a relationship with a PHD student, Defendant Lauren Leydon-Hardy. At that time, Defendant Northwestern did not prohibit romantic relationships between professors and students so long as the professor did not have evaluative authority over the student. Defendant Lackey shared false information with Defendant Slavin including but not limited to claiming that Plaintiff had behaved inappropriately toward female students on a trip to South America.

12. Plaintiff and Defendant Leydon-Hardy had a consensual romantic relationship from approximately October 2011 to January 2012. Defendant Leydon-Hardy was a graduate student at the time but Plaintiff did not supervise her work, assess her grades or have any other evaluative authority over her.

13. After receiving the information from Defendant Lackey, on February 29, 2012, Defendant Slavin talked with Defendant Leydon-Hardy. On two separate occasions, Defendant Slavin encouraged Defendant Leydon-Hardy to discuss her relationship with Plaintiff but, according to Defendant Slavin's own notes, Defendant Leydon-Hardy refused.

14. Based upon this flawed investigation, Defendant Slavin concluded that Plaintiff had violated Defendant Northwestern's sexual harassment policy, but, at the same time, found that Ha was not credible in some of her accusations and found her testimony on at least one point "fuzzy."

15. As a result of Defendant Slavin's flawed findings, Defendant Northwestern took some disciplinary actions against Plaintiff, but chose not to terminate his employment or to bar him from teaching. Plaintiff appealed the disciplinary actions and asked Defendant Northwestern to conduct a formal investigation into the charges – specifically an investigation that would avail itself of critical evidence that Slavin refused to consider. Defendant Northwestern refused to do so.

16. Neither the content of Ha's complaint, the investigation thereof, nor Defendant Northwestern's conclusions and resulting disciplinary actions were a matter of public record until two years later, on February 10, 2014, when Ha, on the day the statute of limitations was set to expire, filed a federal lawsuit against Defendant Northwestern alleging that it discriminated and retaliated against her in violation of Title IX of the Education Amendments Act of 1972 for making the internal complaint of sexual harassment by Plaintiff.

17. Then, on February 26, 2014, the student filed a lawsuit in Illinois state court against Plaintiff for an alleged violation of the Gender Violence Act. Plaintiff filed an Answer, in which he adamantly denied the student's allegations.

18. These two lawsuits received ample media coverage and, as a result, more than 100 individuals planned to disrupt Plaintiff's classes on March 4, 2014. In consultation with Defendant Northwestern, Plaintiff canceled that class. When further protests and disruptions were planned for his remaining classes, Plaintiff and Defendant Northwestern decided that another professor should give the final lectures while Plaintiff continued to grade assignments and supervise students on an individual basis.

19. Thereafter, on or around March 11, 2014, Defendant Northwestern asked Plaintiff if he would agree to not teach any classes during the Spring Quarter which was scheduled to

4

begin on March 31, 2014. Defendant Northwestern told Plaintiff that it was concerned that it could not ensure student safety with ongoing protests and that it was concerned about the disruption of other classes. Defendant Northwestern made it clear that it would not remove him from teaching without his mutual consent and that, if he agreed, he would continue to be paid and be allowed to continue his research, writing and advising responsibilities. Based upon Defendant Northwestern's explicit representation that this request was not punitive in nature, Plaintiff agreed.

20. As part of this mutual agreement and out of fear of further media attention, Plaintiff asked Defendant Northwestern to explicitly agree not to comment on the decision other than to say that "Professor Ludlow is not teaching spring quarter." Defendant Northwestern provided this assurance.

21. Despite that, on or around March 12, 2014, Defendants Northwestern, Cubbage and Schapiro made a number of false statements to students and several media entities regarding the decision.

22. First, on or around Wednesday, March 12, 2014, Defendant Northwestern issued a handout at a meeting with students which falsely identified the cancellation of Plaintiff's Spring Quarter class as part of Defendant Northwestern's "response" to concerns raised over its handling of Title IX issues.

23. Next, Defendant Cubbage informed reporters for *The Daily Northwestern* about the handout and stated that Defendant Northwestern had given this handout to students who had been protesting Plaintiff's continued employment. *The Daily Northwestern* published this information that same day in an article titled "Updated: Ludlow's Spring Quarter class canceled."

5

24. Later that evening, Defendant Cubbage told reporters with *NBC Chicago* that Plaintiff was not teaching any courses in the Spring Quarter and falsely stated that he was on a "leave of absence." *NBC Chicago* published that information in an article titled "Accused NU Prof Won't Teach Next Quarter." Defendant Cubbage later corrected his statement to *NBC Chicago* stating, "It turns out Prof. Ludlow is not on a leave of absence, he's just not assigned to teach a course next quarter," but failed to explain that the decision had been reached mutually by both Defendant Northwestern and Plaintiff and that the decision was not punitive in nature.

25. Next, on or around March 12, 2014, Defendant Schapiro falsely informed reporters for the *Chicago Tribune* that he had "decided that Professor Ludlow should not teach his scheduled 200-level philosophy course in the Spring Quarter." Defendant Schapiro explained, "[w]ith all the controversy and allegations out there, to have [Ludlow] teach in the spring wouldn't be the right thing to do." *Chicago Tribune* published those statements on March 13, 2014 in an article titled "Northwestern: Professor accused of sexual misconduct won't teach rest of school year."

26. On March 14, 2014, *Inside Higher Ed* published an article titled "Northwestern Prof Accused of Assault Won't Teach in Spring" which linked to *Chicago Tribune*'s article and re-stated Defendant Schapiro's statement that having Plaintiff teach in the Spring Quarter "wouldn't be the right thing to do" given "all the controversy and allegations out there."

27. Finally, on March 17, 2014, *Chicago Reader* published an article titled "Northwestern pulls the plug on a high-profile professor" which stated that Defendant Northwestern "let it be known that President Morton Schapiro had made a decision: when spring quarter gets under way at the end of this month, Ludlow will not be teaching."

28. Northwestern's Cubbage's and Schapiro's statement are provably false.

6

29. After this, some students and others were upset that Defendant Northwestern had not terminated Plaintiff and Defendant Lackey began advocating for his termination.

30. Despite that more than two years had elapsed since Plaintiff and Defendant Leydon-Hardy had stopped dating and despite knowing that their relationship had been consensual, Defendant Lackey, who by that time was Defendant Leydon-Hardy's advisor, repeatedly encouraged Defendant Leydon-Hardy to file a complaint against Plaintiff.

31. Then, in March of 2014, Defendant Lackey made a complaint, on behalf of Defendant Leydon-Hardy, with Defendant Northwestern's General Counsel. It was only after Defendant Lackey took this unilateral action that Defendant Leydon-Hardy proceeded with lodging her own complaint.

32. In her complaint, Defendant Leydon-Hardly alleged that she and Plaintiff had a consensual relationship two years prior during which she acknowledged they had had consensual sex. Despite that, she alleged that on one evening she drank too much and woke up the next morning believing that Plaintiff had had non-consensual sex with her. During the investigation, Defendant Leydon-Hardy admitted that she continued her consensual romantic and sexual relationship with Plaintiff after the alleged incident of non-consensual sex and even went on a vacation with him.

33. Following this complaint, Defendant Northwestern retained a third-party investigator, Patricia C. Bobb, to investigate these claims. Defendant Northwestern, however, refused to allow Plaintiff to have counsel present during his meeting with Ms. Bobb.

34. When she first talked with Plaintiff, Ms. Bobb told him that she was only investigating the allegation of the one instance of non-consensual sex. Based upon that, Plaintiff provided Ms. Bobb with documentary evidence which refuted that allegation including but not

limited to a hotel receipt which showed that Plaintiff had stayed at a hotel on the evening of the alleged non-consensual encounter as well as text messages from Defendant Leydon-Hardy the day after the alleged non-consensual encounter in which she told Plaintiff that she loved him.

35. As part of her investigation, Ms. Bobb also talked with Defendant Slavin. Defendant Slavin told Ms. Bobb that back in 2012, while she was investigating the Ha complaint, Defendant Leydon-Hardy told her that "something" had happened between she and Plaintiff and that they had had a "deeply inappropriate" relationship. Defendant Slavin never made such claims in her lengthy 2012 report and made those representations to Bobb knowing that they were false.

36. At the conclusion of her investigation, Ms. Bobb found insufficient evidence to support Defendant Leydon-Hardy's allegation of non-consensual sex.

37. Ms. Bobb also found that Plaintiff did not have evaluative authority over Defendant Leydon-Hardy; thus, Ms. Bobb was unable to find that Plaintiff had violated Defendant Northwestern's policy which prohibited professors from dating students over whom they had such authority.

38. Despite that Defendant Northwestern's policy did not prohibit Plaintiff's relationship with Defendant Leydon-Hardy, the allegedly neutral investigator, nevertheless, found that Plaintiff had violated Defendant Northwestern's policy against sexual harassment because, according to Ms. Bobb, he had unequal power in the relationship.

39. In reaching this conclusion, Ms. Bobb issued a report, which omitted much of the information and evidence that Plaintiff had provided her, including but not limited to the fact that Defendant Leydon-Hardy had a prior romantic and sexual relationship with another philosophy professor at a school which she had previously attended. Further, Ms. Bobb's report did not cite

8

to any specific Northwestern policy prohibiting romantic relationships where there was an imbalance of power between the participants.

40. Defendant Northwestern's policy defines sexual harassment as:

"any ***unwelcome*** conduct of a sexual nature, which includes, but is not limited to, unwelcome sexual advances; the use or threatened use of sexual favors as a basis for academic or employment decisions; conduct that creates a hostile, intimidating or offensive academic or working environment; conduct that has the effect of unreasonably interfering with an individual's work performance; and other verbal, nonverbal, or physical conduct of a sexual nature that is sufficiently severe, persistent, or pervasive to limit a person's ability to participate in or benefit from an educational program or activity."

41. Ms. Bobb concluded that Plaintiff and Defendant Leydon-Hardy's relationship constituted sexual harassment even though she did not find that Plaintiff's conduct was unwelcome and even though she specifically acknowledged that Defendant Leydon-Hardy admitted that she and Plaintiff had consensual sex and dated for a number of months before breaking up.

42. Plaintiff alerted Defendant Northwestern to the flawed and legally unsupported nature of Ms. Bobb's conclusions and asked that the report not be distributed.

43. Despite his request, the report was distributed within the University, despite knowledge of its falsity.

### COUNT I – GENDER DISCRIMINATION IN VIOLATION OF TITLE IX AGAINST DEFENDANT NORTHWESTERN

44. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count I.

45. Defendant Northwestern intentionally discriminated against Plaintiff on the basis of his gender in violation of Title IX when it issued a discriminatory and baseless investigative report which failed to consider or even cite relevant evidence in favor of Plaintiff, when it found

9

that he had violated its sexual harassment policy, and when it communicated these flawed and biased findings internally.

46. Defendant Northwestern engaged in the aforesaid discriminatory acts with malice and with reckless indifference to Plaintiff's federally protected rights under Title IX.

47. As a direct and proximate result of Defendant Northwestern's acts, Plaintiff has suffered damages including but not limited to emotional distress, humiliation, embarrassment and future lost income and benefits.

WHEREFORE, Plaintiff respectfully requests that the Court award him the following relief:

> A. Enter a finding that Defendant Northwestern intentionally discriminated against Plaintiff in violation of Title IX;
>
> B. Enter a finding that Defendant Northwestern engaged in the discrimination with malice and reckless indifference to Plaintiff's federally protected rights under Title IX;
>
> C. Award Plaintiff compensatory damages in an amount to be proven at trial;
>
> D. Award Plaintiff punitive damages in an amount to be proven at trial;
>
> E. Award Plaintiff his attorneys' fees and costs; and
>
> F. Award Plaintiff any such further relief the Court may deem just and equitable.

### COUNT II – DEFAMATION AGAINST DEFENDANTS NORTHWESTERN, SCHAPIRO AND CUBBAGE

48. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count II.

49. Defendants Northwestern, Schapiro and Cubbage's false statements that Defendant Northwestern and/or Defendant Schapiro had removed Plaintiff from teaching and/or placed him on a "leave of absence" because of the "controversy and allegations out there" are defamatory *per se* in that they impute to Plaintiff a want of integrity in the discharge of his duties and prejudice Plaintiff and impute a lack of ability in his trade.

50. Defendants Northwestern, Schapiro and Cubbage publicized these statements without privilege.

51. Defendants Northwestern, Schapiro and Cubbage made these statements with full knowledge of their falsity.

52. As a direct and proximate result of Defendants Northwestern, Schapiro, and Cubbage's false and defamatory statements, Plaintiff has suffered damage to his reputation, emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff respectfully requests that the Court award him the following relief:

A. Enter a finding that Defendants Northwestern, Schapiro and Cubbage defamed Plaintiff;

B. Award Plaintiff compensatory damages in an amount to be proven at trial;

C. Award Plaintiff punitive damages in an amount to be proven at trial; and

D. Award Plaintiff any such further relief the Court may deem just and equitable.

**COUNT III – FALSE LIGHT INVASION OF PRIVACY AGAINST DEFENDANTS NORTHWESTERN, SCHAPIRO AND CUBBAGE**

53. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count III.

54. Defendant Schapiro's false statement that he removed Plaintiff from teaching as a result of the accusations as well as Defendant Cubbage's false claims that Plaintiff was placed on a "leave of absence" cast Plaintiff in a publicly false and damaging light.

55. The false light in which Defendants' actions placed Plaintiff would be highly offensive to a reasonable person.

56. Defendants Northwestern, Schapiro and Cubbage acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed.

57. As a direct and proximate result of Defendants Northwestern, Schapiro and Cubbage's actions, Plaintiff has suffered damage to his reputation, emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff respectfully requests that the Court award him the following relief:

A. Enter a finding that Defendants Northwestern, Schapiro and Cubbage publicly placed him in a false and damaging light;

B. Award Plaintiff compensatory damages in an amount to be proven at trial;

C. Award Plaintiff punitive damages in an amount to be proven at trial; and

D. Award Plaintiff any such further relief the Court may deem just and equitable.

### COUNT IV-DEFAMATION AGAINST DEFENDANTS SLAVIN, LACKEY AND LEYDON-HARDY

49. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count IV.

58. Defendants Slavin, Lackey and Leydon-Hardy's false statements during the 2014 investigation impute to Plaintiff a want of integrity in the discharge of his duties, criminal conduct and prejudice Plaintiff and impute a lack of ability in his trade.

59. Defendants Slavin, Lackey and Leydon-Hardy publicized these statements without privilege.

60. Defendants Slavin, Lackey and Leydon-Hardy made these statements knowing they were false.

61. As a direct and proximate result of Defendants Slavin, Lackey and Leydon-Hardy's false and defamatory statements, Plaintiff has suffered damage to his reputation, emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff respectfully requests that the Court award him the following relief:

A. Enter a finding that Defendants Slavin, Lackey and Leydon-Hardy defamed Plaintiff;

B. Award Plaintiff compensatory damages in an amount to be proven at trial;

C. Award Plaintiff punitive damages in an amount to be proven at trial; and

D. Award Plaintiff any such further relief the Court may deem just and equitable.

### COUNT V – FALSE LIGHT INVASION OF PRIVACY AGAINST DEFENDANTS SLAVIN, LACKEY AND LEYDON-HARDY

62. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count V.

63. Defendants Slavin, Lackey and Leydon-Hardy's false statements cast Plaintiff in a publicly false and damaging light.

64. The false light in which Defendants Slavin's, Lackey's and Leydon-Hardy's actions placed Plaintiff would be highly offensive to a reasonable person.

65. Defendants Slavin, Lackey and Leydon-Hardy acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed.

13

66. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damage to his reputation, emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff respectfully requests that the Court award him the following relief:

A. Enter a finding that Defendants Slavin, Lackey and Leydon-Hardy publicly placed him in a false and damaging light;

B. Award Plaintiff compensatory damages in an amount to be proven at trial;

C. Award Plaintiff punitive damages in an amount to be proven at trial; and

D. Award Plaintiff any such further relief the Court may deem just and equitable.

## COUNT VI – CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

67. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count VI.

68. Defendants unlawfully conspired for the purpose of concocting false evidence to support terminating Plaintiff. In so conspiring, Defendants knowingly made false statements of material fact about Plaintiff and allowed those false statements to be publicized within the University.

69. As a result, Plaintiff has suffered substantial reputational damage and lost income.

WHEREFORE, Plaintiff respectfully requests that the Court award him the following relief:

A. Enter a finding that Defendants engaged in a civil conspiracy against him;

B. Award Plaintiff compensatory damages in an amount to be proven at trial;

C. Award Plaintiff punitive damages in an amount to be proven at trial; and

D. Award Plaintiff any such further relief the Court may deem just and equitable.

## **JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues herein.

                                        PETER LUDLOW

                                        By: /s/ Kristin M. Case
                                              One of His Attorneys

Kristin M. Case
Kate Sedey
Kendra L. Kutko
The Case Law Firm, LLC
250 South Wacker Dr., Ste. 230
Chicago, Illinois 60606
Tel. (312) 920-0400
Fax (312) 920-0800