**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PETER LUDLOW, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 4614 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| NORTHWESTERN UNIVERSITY, | ) | |
| MORTON SCHAPIRO, individually, | ) | |
| ALAN CUBBAGE, individually, LAUREN | ) | |
| LEYDON-HARDY, individually, | ) | |
| JENNIFER LACKEY, individually and | ) | |
| JOAN SLAVIN, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Northwestern University professor Peter Ludlow, the subject of two sexual harassment investigations involving both a graduate and an undergraduate student, brings this suit against Defendants Northwestern University ("Northwestern"), Morton Schapiro, Alan Cubbage, Lauren Leydon-Hardy, Jennifer Lackey, and Joan Slavin claiming that Northwestern's investigation of sexual harassment allegations against him in 2014 violated Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq*., and that Defendants' comments associated with the 2012 and 2014 investigations defamed him and placed him in a false light. Defendants move to dismiss all claims [27, 29]. Because Ludlow has not sufficiently pleaded that the alleged discrimination had any connection to his gender, the Title IX claim against Northwestern is dismissed. Ludlow's defamation and false light publicity claims against Northwestern and Cubbage are dismissed because the alleged statements are substantially true. The defamation and false light claim against Schapiro are dismissed because the statements attributed to him are

either not highly offensive or are substantially true and, in any event, are non-actionable opinion. The false light claims against Slavin and Leydon-Hardy are dismissed because Ludlow has not sufficiently pleaded the publicity of those statements. The defamation claim against Slavin is dismissed because the statements attributed to her are either true, not highly offensive, can be innocently construed, or are non-verifiable opinion. Any claims related to statements by Lackey made in 2012 are barred by the one-year statute of limitations for defamation and false light claims. And the counts related to her 2014 complaint to the General Counsel are dismissed as too vague and ambiguous to support a claim. The defamation claim against Leydon-Hardy is dismissed because the statement was made under a qualified privilege and abuse of that privilege was not sufficiently pleaded. Finally, because all possible independent torts have been dismissed, Ludlow's civil conspiracy count is also dismissed.

## BACKGROUND[1]

Peter Ludlow is a professor in the Philosophy Department at Northwestern. In or around February 2012, an undergraduate student at Northwestern made an internal complaint against Ludlow accusing him of inappropriate sexual advances. Slavin, Northwestern's Director of Sexual Harassment Prevention, "conducted a flawed and one-sided investigation" into the student's complaint during which Slavin interviewed the accuser and Ludlow, but did not inform Ludlow of the charges against him or accept evidence in his favor. Compl. ¶ 10. During the investigation, Slavin interviewed Lackey, another professor in the Philosophy Department. Lackey had no knowledge of the student's allegations, but told Slavin she believed Ludlow was involved in a relationship with a Ph.D. student, Leydon-Hardy. Lackey also told Slavin that Ludlow had behaved inappropriately toward female students on a trip to South America.

---

[1] The facts in the background section are taken from Ludlow's Complaint and are presumed true for the purpose of resolving the Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Ludlow and Leydon-Hardy had a consensual, romantic relationship from approximately October 2011 to January 2012. Leydon-Hardy was a graduate student during the relationship, but Ludlow did not supervise her work or assess her grades and at that time, Northwestern did not prohibit romantic relationships between professors and students so long as the professor did not have evaluative authority over the student. When Slavin approached Leydon-Hardy about her relationship with Ludlow, Leydon-Hardy refused to discuss it.

As a result of her investigation, Slavin concluded Ludlow violated Northwestern's sexual harassment policy. Slavin also found the complaining student not to be credible in some of her accusations and to have given "fuzzy" testimony on at least one point. *Id.* ¶ 14. Because of these findings, Northwestern did not terminate Ludlow or bar him from teaching, but did take some disciplinary action against him. Ludlow appealed and requested a formal investigation, but that request was refused.

In February 2014, the undergraduate student who made the complaint in 2012 filed a federal lawsuit against Northwestern alleging discrimination and retaliation in violation of Title IX related to her complaint against Ludlow and a state lawsuit against Ludlow for violation of the Gender Violence Act. These lawsuits received media coverage that resulted in the planned disruption of Ludlow's classes at Northwestern. In consultation with Northwestern, Ludlow cancelled his March 4, 2014 class and it was decided that another professor would give the final course lectures while Ludlow continued with his grading and supervising responsibilities. On about March 11, 2014, Northwestern asked Ludlow if he would agree not to teach any classes during the spring quarter, due to concerns about the disruption of other classes and student safety. Northwestern explicitly represented that this request was not punitive in nature and that it would not remove him from teaching without his mutual consent. Ludlow would continue his

research, writing, and advising responsibilities and be paid. As part of this agreement, Ludlow asked Northwestern to agree not to comment on his absence from the classroom other than to say, "Professor Ludlow is not teaching spring quarter." *Id.* ¶ 20. Northwestern agreed.

However, around March 12, Northwestern, Cubbage, Vice President of University Relations for Northwestern, and Schapiro, President of Northwestern, made a series of statements or representations to students and several media entities that Ludlow alleges were false. For example, Northwestern issued a handout to students at a meeting describing the cancellation of Ludlow's spring quarter class as part of Northwestern's "response" to the concerns over its handling of Title IX issues. *Id.* ¶ 22. In addition, Cubbage informed reporters for *The Daily Northwestern* about the handout and stated it had been given to students protesting Ludlow's continued employment, which information was published the next day. Cubbage told *NBC Chicago* reporters that Ludlow was not teaching any courses spring quarter and stated falsely that he was on a leave of absence. *NBC Chicago* published that information in an article—Cubbage later corrected his statement about the leave of absence, explaining Ludlow was "just not assigned to teach a course next quarter," but did not further clarify that the decision was mutual and non-punitive. *Id.* ¶ 24. Schapiro told *Chicago Tribune* reporters that he had "decided that Professor Ludlow should not teach his scheduled 200-level philosophy course in the Spring Quarter" and noted, "[w]ith all the controversy and allegations out there, to have [Ludlow] teach in the spring wouldn't be the right thing to do." *Id.* ¶ 25. The *Chicago Tribune* published those statements. *Inside Higher Ed* published an article that linked to the *Chicago Tribune* article and reprinted Schapiro's statement that it "wouldn't be right thing to do" to have Ludlow teach in the fall. *Id.* ¶ 26. *Chicago Reader* published a story a few days later reiterating the idea that Schapiro made the decision that Ludlow would not teach the following quarter.

In March 2014, Lackey encouraged Leydon-Hardy, then her graduate student advisee, to file a complaint against Ludlow. Lackey made a complaint on behalf of Leydon-Hardy to Northwestern's General Counsel. After this, Leydon-Hardy made her own complaint, alleging that she and Ludlow had a romantic relationship two years before. She alleged that, despite engaging in prior consensual sex, one evening she drank too much and woke up in the morning believing that Ludlow had non-consensual sexual relations with her. She admitted continuing her romantic and sexual relationship with Ludlow after this alleged incident.

Upon receiving this complaint, Northwestern retained a third-party, Patricia Bobb, to investigate the claims. Northwestern refused to allow Ludlow to have counsel present with him during his meeting with Bobb. Bobb represented to Ludlow when they first spoke that she was only investigating the allegation of one instance of non-consensual sex. Ludlow provided Bobb a receipt showing that he stayed a hotel on the night in question and positive text messages between Leydon-Hardy and himself the following day. As part of this investigation, Bobb spoke with Slavin. Slavin related Leydon-Hardy's communication to her, during the 2012 investigation, that "something" had happened between Leydon-Hardy and Ludlow and that they had a "deeply inappropriate" relationship. *Id.* ¶ 35. These claims were not included in Slavin's 2012 investigation report and Ludlow alleges Slavin made these claims to Bobb knowing they were false.

Bobb issued a report of her investigation and ultimately found insufficient evidence to support the claim of non-consensual sex. Because Ludlow did not have evaluative authority over Leydon-Hardy, Bobb found Ludlow did not violate Northwestern's policy prohibiting professors from dating students. However, Bobb did find that Ludlow violated Northwestern's policy against sexual harassment because he had unequal power in the relationship. Bobb's report

5

omitted much of the information and evidence Ludlow had provided in his defense, including information on Leydon-Hardy's romantic history. The report further did not cite any Northwestern policy that prohibited relationships that involved an imbalance of power and did not acknowledge that the Northwestern sexual harassment policy prohibits unwelcome conduct, while Ludlow's relationship with Leydon-Hardy was consensual and continued after the incident. Although Ludlow alerted Northwestern that Bobb's conclusions were flawed and unsupported, and asked that the report not be distributed, Northwestern distributed it internally.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.     Count I (Title IX)**

**A.     Title VII Preemption**

Northwestern asks the Court to dismiss Ludlow's Title IX claim with prejudice because it

is based on alleged discrimination related to his employment and is therefore preempted by Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  Ludlow responds that he is not

bringing an employment discrimination claim and concedes that he has not alleged the necessary

adverse action required for such a claim.  *See* Resp. at 5.  Rather, he asserts that Northwestern

intentionally discriminated against him on the basis of his gender in violation of Title IX "when

it issued a discriminatory and baseless investigative report which failed to consider or even cite

relevant evidence in favor of [him], when it found that he had violated its sexual harassment

policy, and when it communicated these flawed and biased findings internally."  Compl. ¶ 45.[2]

Ludlow alleges his damages are emotional distress, humiliation, embarrassment, and future lost

income and benefits and requests compensatory and punitive damages.  *Id.* ¶ 47.  Courts in this

Circuit find Title IX employment discrimination claims to be preempted by Title VII.  *See Jones*

*v. Sabis Educ. Sys., Inc.*, No. 98 C 4252, 1999 WL 1206955, at *10 n.7 (N.D. Ill. Dec. 13, 1999);

*Kowal-Vern v. Loyola Univ. of Chicago*, No. 97 C 6409, 2002 WL 1880131, at *5 (N.D. Ill.

Aug. 14, 2002); *Blazquez v. Bd. of Educ. of City of Chicago*, No. 05 CV 4389, 2006 WL

---

[2] While the parties have focused their arguments on the 2014 investigation, the Court is not clear that
Ludlow is limiting his Title IX claim to the 2014 investigation.  *See* Compl.  ¶¶ 14, 15, 44.  However, the
Court finds that any Title IX claim relating to the 2012 investigation is barred by a two year statute of
limitations.  *Stanley v. Tr. of Cal. State Univ.*, 433 F.3d 1129, 1135–36 (9th Cir. 2006) ("Therefore, we
join every other federal circuit to consider this issue and hold that Title IX claims are subject to the
applicable state statute of limitations for personal injury actions."); *Cetin v. Purdue Univ.*, 94 F.3d 647
(Table), 1996 WL 453229, at *2 (7th Cir. Aug. 7, 1996) (statute of  limitations for Title IX claims are
taken from the state limitations period for personal injury cases); *Singleton v. Chicago Sch. Reform Bd. of
Tr. of Bd. of Educ.*, No. 00 C 395, 2000 WL 777925, at *18–19 (N.D. Ill. June 13, 2000) (applying two
year Illinois statute of limitations for personal injury action to Title IX claim).

3320538, at *11 (N.D. Ill. Nov. 14, 2005).  However, because Ludlow's Title IX claim by his own assertion is not for employment discrimination, Title VII preemption at this stage in the litigation is inappropriate.

Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  The Supreme Court has found an implied private right of action in Title IX, with private parties authorized to seek monetary damages for intentional violations.  *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005) (*citing Cannon v. Univ. of Chicago*, 441 U.S. 677, 690–93, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979)).  Student claims of sexual harassment by teachers or other students are well-established examples of such suits.  *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998) (by a teacher); *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 643, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999) (by a fellow student).  Employees of institutions receiving federal financial assistance may also bring private right of action suits, although the boundaries of those claims are less well-defined.  *See, e.g.*, *Jackson*, 544 U.S. at 184 (finding Title IX allowed retaliation suit by coach who complained about sex discrimination in athletics resources at his high school).

Northwestern argues that Title VII preempts employment discrimination claims brought under Title IX, citing *Lakoshi v. James*, 66 F.3d 751, 755 (5th Cir. 1995), and *Waid v. Merrill Area Public Schools*, 91 F.3d 857, 861–62 (7th Cir. 1996).  In *Lakoshi*, the Fifth Circuit, after extensive legislative history analysis, concluded that Congress did not intend to create a private right of action for employment discrimination under Title IX.  66 F.3d at 757 ("Title VII

provided *individuals* with administrative and judicial redress for employment discrimination, while Title IX empowered *federal agencies* that provided funds to educational institutions to terminate that funding upon the finding of employment discrimination.  In other words, Congress intended to bolster the enforcement of the pre-existing Title VII prohibition of sex discrimination in federally funded educational institutions; Congress did not intend Title IX to create a mechanism by which individuals could circumvent the pre-existing Title VII remedies.").  In *Waid*, the Seventh Circuit examined the case of a teacher who, denied a full-time teaching position, sought and won a state administrative agency claim for sex discrimination.  91 F.3d at 860.  She then filed suit in federal court, asserting a Title IX violation and individual § 1983 equal protection claims against the school administrators.  *Id.*  In considering whether preemption applied to any of her claims, the Court explained that Waid's success with the state administrative agency satisfied any claim she might have had under Title VII.  91 F.3d at 862.  Waid's claim arose before the amendments to Title VII allowed for more than equitable relief.  *Id.*  The Court therefore, citing *Lakoshi* among other cases, determined that Title VII preempted any of her claims for equitable relief under Title IX.  *Id.* ("It is well-established that Title VII's own remedial mechanisms are the only ones available to protect the rights created by Title VII.").[3]

Although *Waid* dealt only with a claim for equitable relief (because at the time of her claim, that was all that was available under the statute), other courts in this district have interpreted *Waid* as holding that Title VII preempts any Title IX employment discrimination suit.  *See Jones*, 1999 WL 1206955, at *10 n.7 (finding Title VII preempted Title IX wrongful

---

[3] The *Waid* court went on to determine that Title IX preempted § 1983 intentional discrimination claims. 91 F.3d at 863.  The Supreme Court abrogated that portion of *Waid*'s holding without discussing the interplay of Title VII and Title IX.  *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258, 129 S. Ct. 788, 172 L. Ed. 2d 582 (2009)

discharge claim); *Kowal-Vern*, 2002 WL 1880131, at *5 ("Title VII is the exclusive remedy for [the plaintiff's] claim of employment discrimination based on gender."); *Blazquez*, 2006 WL 3320538, at *11 ("While the overall scope of Plaintiff's claims might seem more appropriately addressed as a systemic educational problem under Title IX, this particular claim [failure to provide a teacher's aide] is based upon the harassment Plaintiff herself suffered. There is therefore no reason to look beyond the comprehensive scope of remedies and actions available to Plaintiff under Title VII."). In finding preemption, these courts "express[] concern that by allowing a comparable cause of action under Title IX the very comprehensive, detailed, and express provisions of Title VII could be completely avoided," and explain that Congress did not intend that Title IX "serve as an additional protection against gender-based discrimination regardless of the available remedies under Title VII." *See Howard v. Bd. of Educ. of Sycamore Cmty. Unit Sch. Dist. No. 427*, 893 F. Supp. 808, 815 (N.D. Ill. 1995) (internal quotation marks omitted) (citation omitted).

Ludlow cites to the Department of Justice Civil Rights Division's Title IX Manual giving the Department's position that Title VII and Title IX are "separate enforcement mechanisms" and "[i]ndividuals can use both statutes to attack the same violations." Resp. at 7. While this may be the Department's position, a policy manual is not entitled to *Chevron*-style deference, but rather "respect . . . but only to the extent that those interpretations have the power to persuade." *See Christensen v. Harris County*, 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000) (internal quotation marks omitted) (citation omitted). The Manual as quoted by Ludlow further states: "This view is consistent with the Supreme Court's decisions on Title IX's coverage of employment discrimination, as well as the different constitutional bases for Title IX and Title VII." Resp. at 7. This brief summation does not give the Court any basis to go beyond this

Circuit's weight of authority finding employment discrimination claims under Title IX are preempted by Title VII.[4]

Therefore, if Ludlow were alleging some form of employment discrimination, his claim would be preempted by Title VII. However, Ludlow has affirmatively disavowed this theory, *see* Resp. at 5, and his Complaint leaves enough room regarding this theory such that the Court should not find this claim wholly preempted. The 2014 investigation was conducted because of his employment as a professor at Northwestern, and the investigation findings relate to his status as a professor and the "imbalance in power" in his relationship with the graduate student involved. Ludlow would not be subject to Northwestern's sexual harassment policies and procedures but for his job there. These factors point to his claim stemming from his employment and a finding of preemption.[5] However, Ludlow does not allege an adverse employment action related to the 2014 investigation—indeed, in contrast to the disciplinary actions that resulted from the 2012 investigation, Ludlow does not mention any discipline from the 2014 investigation. *See* Compl. ¶ 15. Ludlow, as the plaintiff, is the "master of his complaint," and therefore the Court must, at this stage, interpret his claim as pleaded. *See Mendez v. Plastofilm Indus., Inc.*, No. 91 C 8172, 1992 WL 80969, at *2 (N.D. Ill. April 15, 1992) (remanding case, noting, "it is irrelevant that [the plaintiff] could have pursued two of his claims under Title VII, because he chose to assert claims only under Illinois law"). This is not the typical Title IX

---

[4] The Court acknowledges that other circuits have found a private right of action for employment discrimination under Title IX. *See, e.g.*, *Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 205–06 (4th Cir. 1994); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 897 (1st Cir. 1988).

[5] Although a preemption analysis supersedes a merits analysis, if the Court were to consider Ludlow's Title IX claim as a Title VII claim, that claim must fail because an investigation by an employer, without more, is not an adverse action. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 885–86 (7th Cir. 2012) (affirming dismissal of Title VII claim, explaining, "[m]ore importantly, no adverse action of any kind was taken against [the plaintiff] as a result of the investigation and the investigation itself was not an adverse action").

employee case in which a teacher alleges a failure to promote or termination.  Further, Ludlow couches his list of injuries in vague terms that could apply either to his current working life— "embarrassment," "future lost income and benefits"—or possibly to another job or his outside work endeavors.  Compl. ¶ 47.

Because the Complaint does not clearly warrant a finding of preemption, the Court will not dismiss with prejudice at this stage.

### B.      Failure to State a Claim

Since Ludlow denies that his claim is one for employment discrimination, the Court will address it as a Title IX sex discrimination claim.  Ludlow does not plead that Northwestern's sexual harassment investigations are systemically flawed—rather he alleges this particular investigation produced "a discriminatory and baseless" report that failed to consider or cite evidence in his favor and that these findings and Northwestern's internal distribution of these findings were intentional acts of discrimination against him.  Compl. ¶¶ 45–46.  His claim is essentially that this investigation was biased against him because he is a man and that its conclusions were flawed as a result of that bias.  Ludlow does not point the Court to any cases that would support this novel use of Title IX to attack the outcome of a single internal investigation of an employee and the Court could find none.[6]  The Court finds very persuasive the Fifth Circuit's legislative history analysis showing that Title IX was intended to be a supplemental remedy in the educational setting—i.e. a "big stick" that federal agencies could use against allegations of sex discrimination, separate and apart from an individual's right to sue

---

[6] Recently, some university students have sued under Title IX to bring their schools' student sexual harassment/sexual assault complaint procedures into compliance with federal regulations and agency guidance requiring due process and equal protection for participants.  *See, e.g.*, *Doe v. Columbia Univ.*, Case No. 1:14-cv-03573-JMF (S.D.N.Y. 2014).  Ludlow does not make similar systemic, process based claims or even allege that Northwestern disciplined him in conjunction with this investigation, and, in any event, the viability of this sort of Title IX suit has not been tested.

under Title VII.  *See Lakoski*, 66 F.3d at 757 ("Title VII provided *individuals* with administrative and judicial redress for employment discrimination, while Title IX empowered *federal agencies* that provided funds to educational institutions to terminate that funding upon the finding of employment discrimination.").  But even if the Court were to interpret Title IX's private right of action broadly enough to encompass Ludlow's claim that the investigation and its findings constitute a violation, Ludlow's Complaint fails to state a claim for sex discrimination.

To sufficiently plead Title IX sex discrimination, Ludlow must allege: 1) that he "was excluded from participation in or denied benefits of or subjected to discrimination in an educational program; 2) that receives federal financial assistance; and 3) that the exclusion was on basis of sex, i.e., gender."  *See Torrespico v. Columbia College*, No. 97 C 8881, 1998 WL 703450, at *17 (N.D. Ill. Sept. 30, 1998).  And although Ludlow "need not plead specific facts under notice pleading requirements, he must provide either facts or conclusory allegations sufficient to put [Northwestern] on notice of his claim and from which the Court can infer that he has a cause of action."  *Id.* at *18.  Ludlow must provide some "particularized allegation" that would allow the Court to infer a causal connection between his treatment and gender bias.  *Id.* at *18 n.11 (citing *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2nd Cir. 1994)).

Ludlow has not alleged anything approaching "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding."  *See Yusuf*, 35 F.3d at 715.  Ludlow's Complaint and Response set out a list of problems with the 2014 investigation.  *See* Resp. at 9.  But even considered in the light most favorable to Ludlow, these complaints contain no explicit or implied link to sex or gender.  For example, the allegations that Bobb told Ludlow she was investigating only the allegation of non-consensual sex, that Ludlow provided information that the sex was consensual, and that Bobb found insufficient evidence that the sex

was non-consensual have no conceivable link to Ludlow's gender. *Id.* That Bobb went on to conclude Ludlow had unequal power in the relationship, failed to cite any university policy against such relationships, and failed to consider evidence of Leydon-Hardy's prior romantic history also does not create a plausible inference that this investigation and its conclusions were intentionally biased against Ludlow because he is male. Finally, these allegations taken together do not compel a different, potentially discriminatory conclusion. *Cf. Yusuf*, 35 F.3d at 715–16 (finding complaint sufficiently detailed regarding retaliatory motive for the harassment charge, irregularities during the proceeding, and allegations that males at Vassar accused of harassment are "historically and systematically and invariably found guilty, regardless of the evidence" (quotation marks omitted)). Ludlow's allegations that the investigation was flawed and biased are not connected in any way to his gender and are wholly conclusory, and therefore do not meet the Rule 8 pleading requirements. *See Iqbal*, 556 U.S. at 678. Thus, the Court finds that Ludlow's Complaint fails to state a Title IX claim and dismisses that claim without prejudice.

## II.     Counts II-V (Defamation & False Light Invasion of Privacy)

Ludlow brings defamation and false light invasion of privacy claims against Northwestern, Schapiro, and Cubbage for the statements that "Northwestern and/or Defendant had removed [Ludlow] from teaching and/or placed him on a 'leave of absence' because of the 'controversy and allegations out there.'" Compl. ¶¶ 49, 53–54. Ludlow also brings defamation and false light invasion of privacy claims against Slavin, Lackey, and Leydon-Hardy for "statements made during the 2014 investigation [that] impute to [Ludlow] a want of integrity in the discharge of his duties, criminal conduct and prejudice [Ludlow] and impute a lack of ability in his trade." *Id.* ¶¶ 58, 62–63. Defendants argue these statements are not actionable under any

legal theory, as they are either not false statements of fact, can be innocently construed, are opinion, or are privileged.

To state a claim for defamation under Illinois law, Ludlow "must present facts showing that the defendant made a false statement about [him], that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *See Green v. Rogers*, 917 N.E.2d 450, 459, 234 Ill. 2d 478, 334 Ill. Dec. 624 (2009). Ludlow pleads these as defamation *per se* claims, meaning the statement's harm "is obvious and apparent on its face." *Id.* Illinois considers five categories of statements to be *per se* defamatory, including, "words that impute a person has committed a crime . . . words that impute a person is unable to perform or lacks integrity in performing her or his employment duties [and] words that impute a person lacks ability or otherwise prejudices that person in her or his profession." *Id.* The allegedly defamatory statement need not be laid out verbatim, but its substance must be pleaded with "sufficient precision and particularity so as to permit initial judicial review of its defamatory content." *Id.* To require Ludlow to set forth the alleged defamatory statements with particularity is not holding him to a higher, fact pleading standard, but rather to require he plead the substantive elements of these torts under Illinois law. *See Keen v. Bluestar Energy Servs., Inc.*, No. 11 C 7754, 2012 WL 1118215, at *5 (N.D. Ill. Mar. 30, 2012) (requiring plaintiff to plead the basis for his belief that defamation *per se* occurred, citing *Lott v. Levitt*, 556 F.3d 564, 569 (7th Cir. 2009)).

A false light publicity claim requires Ludlow to plead that 1) he was "placed in a false light before the public as a result of the [D]efendants' actions," 2) that false light "would be highly offensive to a reasonable person," and 3) Defendants "acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the

statements were true or false." *See Kirchner v. Greene*, 691 N.E.2d 107, 115–16, 294 Ill. App. 3d 672, 229 Ill. Dec. 171 (1998).

Ludlow may not base either his defamation or false light claims on statements that are "substantially true." "The 'substantial truth' is shown where the 'gist' or 'sting' of the allegedly defamatory material is true." *Coghlan v. Beck*, 984 N.E.2d 132, 146, 2013 IL App (1st) 120891, 368 Ill. Dec. 407 (2013) (quotation marks omitted). The question of substantial truth, while usually reserved for the jury, may be determined as a matter of law if "no reasonable jury could find that substantial truth had not been established." *Id.* (quotation marks omitted). Similarly, an opinion—i.e. a statement that is not objectively verifiable—cannot be the basis for a defamation claim. *See Wynne v. Loyola Univ. of Chicago*, 741 N.E.2d 669, 676, 318 Ill. App. 3d 443, 251 Ill. Dec. 782 (1st Dist. 2000). And even if a plaintiff is not required to plead facts to counter an affirmative defense, he can "plead himself out of court by alleging facts which show he has no claim." *Soo Line RR. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997).

### A.      Northwestern University

Ludlow's claims for defamation and false light against Northwestern are based on a handout distributed to a meeting of students on March 12, 2014 that identified the cancelation of Ludlow's class spring quarter as "part of Defendant Northwestern's 'response' to concerns raised over its handling of Title IX issues." Compl. ¶ 22. This is not a *per se* defamatory statement, however, because the Complaint's own allegations show it to be substantially true. *See Coghlan*, 984 N.E.2d at 147 (comparing the "'gist' or 'sting'" of statement to allegation in the complaint). Ludlow pleads that the agreement that Ludlow would not teach any spring quarter classes was prompted by Northwestern, which expressed concern about safety and the disruption of other classes due to on-going student protests resulting from media coverage of the Title IX and

Gender Violence Act lawsuits. Compl. ¶¶ 16–19. The gist of the statement is that the protests prompted Northwestern to act and part of that action was the cancelation of Ludlow's spring class—this is borne out by the allegations of the Complaint. The claims against Northwestern for defamation and false light are dismissed.

B.    **Schapiro**

Ludlow's claims for defamation and false light against Schapiro are based on two statements Schapiro allegedly made to reporters for the *Chicago Tribune*: 1) that Schapiro had "decided that Professor Ludlow should not teach his scheduled 200-level philosophy course in the Spring Quarter," and the comment that 2) "[w]ith all the controversy and allegations out there, to have [Ludlow] teach in the spring wouldn't be the right thing to do." Compl. ¶ 25. Defendants argue that Ludlow misquotes the article, as it does not quote Schapiro as making the first comment, and, even if Schapiro did make that comment, both the statements are substantially true.

Defendants attach the *Chicago Tribune* article to their response and it is proper for the Court to consider this document, which is referenced in the complaint and central to Ludlow's claims. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (rejecting argument that district court improperly considered allegedly infringing television program attached to motion to dismiss). The *Tribune* article contains the second quote attributed to Schapiro. Defs.' Memo. Ex. D. As for the first statement, the article reads: "Northwestern President Morton Schapiro decided that the professor, Peter Ludlow, should not teach his scheduled 200-level philosophy course when spring quarter begins on March 31." *Id.* Defendants first argue the article is not quoting Schapiro, therefore the statement cannot be attributed to Schapiro. However Ludlow pleads that "Schapiro falsely informed reporters for the

*Chicago Tribune* that he had 'decided that Professor Ludlow should not teach'" and that the *Tribune* then published that statement. *See* Compl. ¶ 25. Neither party provides any case law stating that a plaintiff cannot state a claim for defamation based on comments, rather than quotes, to a newspaper; therefore, the fact that Schapiro is not quoted is not dispositive. Similarly, the Court cannot find Schapiro's statement to be substantially true based on the pleadings because Ludlow alleges that Northwestern (without specifying which specific Northwestern representative) asked him if he would agree not to teach spring quarter classes. *See id.* ¶ 19. Thus, Schapiro's alleged statement that he decided Ludlow should not teach is not contained in the Complaint.

However, the statement that Schapiro decided that Ludlow should not teach is not "highly offensive" such that it should be considered defamation *per se*. *Green*, 917 N.E.2d at 463 ("If the statement may reasonably be innocently interpreted, it cannot be actionable *per se*."). "The Illinois courts have emphasized that the meaning of a statement is not a fact for the jury to find, but a question of law to be resolved by the court." *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009) (internal quotation marks omitted) (citation omitted). And while the Court must take all well-pleaded allegations in a complaint as true for the purposes of determining a motion to dismiss, the Court need not "take the plaintiff's *interpretation* of the allegedly defamatory words at face value." *Id.* at 569. Ludlow argues that Schapiro's statements were false because it was Ludlow's voluntary decision not to teach. That Schapiro decided Ludlow "should" not teach does not automatically create the connotation that Northwestern unilaterally decided that Ludlow would not teach the following quarter. That Schapiro determined Ludlow "should" not teach in the context of student protests may have reflected the student safety and class disruption concerns discussed in the Complaint as easily as a punitive, non-voluntary teaching hiatus. *See*

Compl. ¶ 19. Read in the context of Schapiro's quote, also challenged by Ludlow as defamatory, that "[w]ith all the controversy and allegations out there, to have him teach in the spring wouldn't be the right thing to do," this statement can readily be interpreted as Schapiro's response to student protests about Northwestern's handling of student complaints and his feeling that Ludlow's presence would be disruptive. It, however, does not necessarily implicate Ludlow's teaching ability or create the idea that the decision for Ludlow not to teach was unilateral. *See Green*, 917 N.E.2d at 463–65 (dismissing defamation *per se* complaint because statements that plaintiff had a "long pattern of misconduct with children" and "abused players, coaches, and umpires" could be innocently construed).

Ludlow also challenges Schapiro's quoted statement that, "[w]ith all the controversy and allegations out there, to have [Ludlow] teach in the spring wouldn't be the right thing to do." Compl. ¶ 25. Defendants argue the Complaint shows this statement to be true, since Northwestern asked Ludlow not to teach in the spring because of its concerns for student safety and the disruption of other classes. *Id.* ¶ 19. This statement does consistently reflect this concern, expressed by Northwestern to Ludlow and detailed in the Complaint. *Id.* Therefore a claim for defamation and false light based on it cannot stand. Furthermore, this comment is non-actionable opinion. An allegedly defamatory statement is not opinion if it "contains an objectively verifiable assertion." *See Wynne*, 741 N.E.2d at 676 (statements regarding telephone calls that "seemed inappropriate," among others, constituted opinion). Whether something is or isn't "the right thing to do" is not a verifiable assertion, but rather Schapiro's own feeling on the subject. *See id.* (defendant merely expressing her opinion). For this additional reason, Ludlow's defamation claim against Schapiro is dismissed.

### C. Cubbage

Ludlow's defamation and false light claims against Cubbage are based on his statement to *NBC Chicago* reporters that Ludlow was on a "leave of absence," a statement that Cubbage subsequently corrected, stating, "It turns out Prof. Ludlow is not on a leave of absence, he's just not assigned to teach a course next quarter." Compl. ¶¶ 24, 49, 54; Resp. Ex. C. Defendants argue that the initial "leave of absence" statement, while not technically accurate, was substantially true and therefore not actionable defamation. Ludlow argues that the substantial truth of this statement should be a jury question; however, as discussed above, if Ludlow has set forth the facts to show a jury must find this to be substantially true, the court may determine it as a matter of law. *Coghlan*, 984 N.E.2d at 146. Ludlow pleads that he agreed to Northwestern's request that he not teach spring quarter, although he would maintain his other academic duties. Compl. ¶ 19. While not technically a leave of absence (a statement that Ludlow pleads was subsequently corrected), that Ludlow was not teaching in the spring was true and the "gist" of this statement. Therefore defamation *per se* has not been pleaded. *See Lerman v. Turner*, No. 10-cv-2169, 2013 WL 4495245, at *18 (N.D. Ill. Aug. 21, 2013) (representation that former employee had been terminated, although technically she had been suspended without pay, was substantially true as her relationship with the employer was effectively ended).

Further that Cubbage corrected the statement, but then "failed to explain that the decision had been reached mutually by both Defendant Northwestern and Plaintiff and that the decision was not punitive in nature," does not turn this statement into a false light claim. *See* Compl. ¶ 24. Ludlow does not explain why the statement that he was on a leave of absence would create the inference that the decision had not been mutual or was necessarily punitive, rather than simply what the statement connotes: that he was not teaching for a limited period of time. *See*

*Green v. Trinity Int'l Univ.*, 801 N.E.2d 1208, 1217–18, 344 Ill. App. 3d 1079, 280 Ill. Dec. 263 (2003) (failing to include language in termination memorandum did not imply employee was fired for moral turpitude).

Ludlow's defamation and false light claims against Cubbage are dismissed.

**D.    Slavin**

Ludlow's defamation and false light claims against Slavin are based on Slavin's comment to the 2014 investigator, Bobb, that during the 2012 investigation, "Leydon-Hardy told her 'something' had happened between she and [Ludlow] and that they had had a 'deeply inappropriate' relationship." Compl. ¶ 35. Defendants seek dismissal of this claim on the basis that this statement is too vague and ambiguous to be actionable, that a statement made to one other person is not sufficient publicity for a false light claim, and that the statement made in the context of an employer's investigation of its employee is covered by qualified privilege. Ludlow argues that publication to one other individual is sufficient and that he pleaded that Slavin abused the privilege by repeating a statement she knew to be false.

The false light claim against Slavin is dismissed because Ludlow has not pleaded publicity. This statement was allegedly made by Slavin to one other person. *See* Compl. ¶ 35 (specifically noting Slavin did not make this claim in her 2012 report). A statement to one person is not sufficiently public to sustain a claim of false light publicity. *See Matrix Essentials, Inc. v. Karol*, No. 89 C 9611, 1992 WL 166926, at *2 (N.D. Ill. July 8, 1992) (holding comments to two customers not sufficient publicity, quoting the Illinois Supreme Court to explain, "the heart of this tort lies in the publicity"). Ludlow points the Court to several defamation cases discussing comments made by employees within a corporation. *See* Resp. at 11. However, Ludlow confuses publication in the defamation context with publicity for a false light claim—

whereas those cases seem to suggest publication to any third person may suffice for defamation, for false light, the statement must be publicized to the "public at large." *See Jones*, 1999 WL 1206955, at *8 (quoting *Silk v. City of Chicago*, No. 95 C 0143, 1997 WL 790598, at *19 (N.D. Ill. Dec. 17, 1997)).

Ludlow's defamation claim against Slavin is also dismissed. Defendants argue that the claimed statement is too ambiguous to be actionable. Ludlow pleads that Slavin allegedly repeated Leydon-Hardy's comment that "'something' had happened between she and [Ludlow] and that they had had a 'deeply inappropriate' relationship." Compl. ¶ 35. He also pleads that Slavin did not make these claims in her 2012 report but that she repeated them to Bobb despite knowing they were false. *Id.* That Ludlow and Leydon-Hardy had a relationship is stated in the Complaint, and therefore taken as true and is not actionable. *See id.* ¶ 12. That "something" happened is not highly offensive and can be innocently construed—even in the context of a sexual harassment investigation, that "something" happened is most readily understood as referring to the relationship itself. *Green*, 917 N.E.2d at 463 ("a statement 'reasonably' capable of a nondefamatory interpretation, given its verbal or literary content, should be so interpreted" (quotation marks omitted)). The characterization of that relationship as "deeply inappropriate" by Leydon-Hardy (and repeated by Slavin) is non-verifiable opinion. *See Wynne*, 741 N.E.2d at 676 (characterization of actions as "inappropriate" was opinion). Whether their relationship was "deeply inappropriate" is not verifiable in the way that an individual's competence can be measured against workplace awards or acts against women could be verified with the women themselves. *See McDaniel v. Loyola Univ. Med. Ctr.*, No. 13-CV-06500, 2014 WL 4269126, at *12–13 (N.D. Ill. Aug. 28, 2014) (refusing to dismiss on statements that plaintiff was unprofessional, incompetent, and aggressive in the workplace with women).

Ludlow argues that, in the context of a sexual harassment investigation, this statement "creates the impression that it is rooted in fact and is sufficiently verifiable to constitute actionable defamation." *See* Resp. at 12. When considering whether a statement "reasonably presents or implies the existence of facts about the plaintiff," the Court reviews three considerations: 1) "whether the language of the statement has a precise and readily understood meaning, while bearing in mind that the first amendment protects overly loose, figurative, rhetorical, or hyperbolic language, which negates the impression that the statement actually presents facts"; 2) "whether the general tenor of the context in which the statement appears negates the impression that the statement has factual content"; and 3) "whether the statement is susceptible of being objectively verified as true or false." *See Hopewell v. Vitullo*, 701 N.E.2d 99, 103, 299 Ill. App. 3d 513, 233 Ill. Dec. 456 (1998). The "emphasis is on whether the statement contains an objectively verifiable assertion." *Id.* "Deeply inappropriate" is hyperbolic on its face and does not have a precise and readily understood meaning. Further, the context within which the statement was made, the 2014 investigation, already had as its starting point that there was a relationship. That their relationship was "deeply inappropriate" cannot be determined by a comparison to the factual circumstances of the relationship. Rather it is a characterization of the nature of the Leydon-Hardy/Ludlow relationship along the lines of a legal conclusion. Ludlow's defamation claim against Slavin is dismissed.[7]

**E.    Lackey**

Ludlow's defamation and false light claims against Lackey are based on: 1) "a complaint" she made with Northwestern's General Counsel on behalf of Leydon-Hardy in March 2014; and 2) comments to Slavin during the 2012 investigation that she believed Ludlow had

---

[7] Because the Court has determined Ludlow fails to state a claim for defamation and false light, it will not consider Defendants' qualified privilege defense to this claim.

been in a relationship with a Ph.D. student and that he had behaved inappropriately toward female students on a trip to South America. Compl. ¶¶ 11, 31. Defendants seek dismissal of these claims on the basis that any comments during the 2012 investigation are barred by the one-year statute of limitations and a "complaint" to the General Counsel is too vague to support a claim and in any event is absolutely privileged. Ludlow does not respond to these arguments.

Ludlow's Complaint was filed June 18, 2014 and Lackey's comments to Slavin are alleged to have occurred sometime around February 2012. *See* Compl. ¶¶ 9–11. Therefore any claims based on the 2012 comments are barred by the one-year statute of limitations for defamation and false light claims. *See* 735 Ill. Comp. Stat. § 5/13-201 ("Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued."); *Bryson v. News Am. Publ'n, Inc.*, 672 N.E.2d 1207, 1222, 174 Ill. 2d 77, 220 Ill. Dec. 195 (1996). This would include any claim for civil conspiracy. *See Porter v. Pipefitters Assoc. Local Union 597, U.A.*, No. 12-cv-9844, 2013 WL 5162206, at *3 (N.D. Ill. 2013) ("[I]n Illinois, a conspiracy claim is governed by the statute of limitations for the underlying tort." (quoting *Mauvais-Jarvis v. Wong*, 987 N.E.2d 864, 894, 2013 IL App (1st) 120070, 370 Ill. Dec. 98 (2013))).

The defamation and false light claims related to Lackey's 2014 "complaint" to the General Counsel are also dismissed. Ludlow does not identify the content or even nature of the complaint. *See* Compl. ¶ 31. This is not enough to state a claim for either tort. *See Green*, 917 N.E.2d at 460 (allegations that plaintiff "exhibited a long pattern of misconduct with children" and "abused players, coaches, and umpires" are a "summary of the types of statements," not a "precise and particular account of the [allegedly defamatory] statements"); *Kirchner*, 691 N.E.2d at 116 ("Absent some allegation as to what specific statement was false, a claim based on *false*

light simply fails to satisfy the most basic element of the cause of action.").  Lackey argues that her comments are also subject to absolute or qualified privilege.  However, because the Court cannot find these comments are pleaded with sufficient detail to sustain these claims, it will not consider affirmative defenses at this time.

The defamation and false light claims against Lackey are dismissed.

## F.      Leydon-Hardy

Ludlow's defamation and false light claims against Leydon-Hardy are based on her complaint to Northwestern's General Counsel in March 2014 that, during a consensual romantic and sexual relationship with Ludlow, "one evening she drank too much and woke up the next morning believing that [Ludlow] had had non-consensual sex with her."  Compl. ¶ 32.  Leydon-Hardy stated to the General Counsel during the investigation that she continued her relationship with Ludlow after the incident.  *Id*.  Leydon-Hardy has filed a separate motion to dismiss [29].  In it, she argues that the defamation claim against her should be dismissed because her statement to the General Counsel was substantially true, it is opinion, it was given under qualified privilege and that no abuse of the privilege occurred.  Leydon-Hardy also argues that absolute privilege should be accorded to students' statements made during a private school's investigation of sexual misconduct by a faculty member.  Ludlow argues that the defamation claim should survive because by alleging that Leydon-Hardy acted with malice, he has met his burden to defeat a qualified privilege defense at the pleadings stage.  Ludlow also argues absolute privilege does not apply, the statements are not protected opinions, and they are not capable of innocent construction.

In addition, Leydon-Hardy seeks dismissal of the false light claim on the basis that Ludlow has not sufficiently pleaded publicity of the comments since she gave them only to the

General Counsel.  Ludlow argues that the special relationship exception would apply here and further that Leydon-Hardy publicized her false statements to Lackey, Slavin, and Bobb.

As an initial matter, any claims based on the comments made by Leydon-Hardy during the 2012 investigation would be barred by the Illinois one-year statute of limitations.  *See* 735 Ill. Comp. Stat. § 5/13-201 & discussion, *supra*.  Therefore any Leydon-Hardy comments to Lackey or Slavin at that time are not actionable.  *See* Compl. ¶ 11.  No specific comments by Leydon-Hardy to Slavin in 2012 are pleaded—Ludlow specifically alleges that Leydon-Hardy refused to discuss their relationship with Slavin during the 2012 investigation.  *See id.* ¶ 13.

Along these lines, Leydon-Hardy moves to dismiss paragraph 35 of the Complaint, which contains allegations related to Slavin's 2014 conversation with Bobb in which Slavin relates Leydon-Hardy's comments from 2012 that "something happened" and she and Ludlow had a "deeply inappropriate" relationship.  *See* Compl. ¶ 35.  But Ludlow does not plead that Leydon-Hardy herself made any statements during the 2014 investigation beyond the complaint to the General Counsel—the comments at issue in paragraph 35 are Slavin's comments to Bobb.  *See id.* ¶ 32.  And Ludlow does not give the Court any case law to support the idea that Leydon-Hardy could be held accountable for someone else's repetition of her alleged statements from two years prior.  In fact, the Complaint does not plead that Leydon-Hardy spoke with Bobb at all during the 2014 investigation.  In any event, this hearsay statement by Slavin does not state a claim for either tort, per the Court's discussion above.  Therefore, to the extent Ludlow attempts to base his defamation and false light claims against Leydon-Hardy on the 2012 "deeply inappropriate" and "something happened" comments, those claims are dismissed.  Similarly, although Ludlow pleads that, around March 2014, Lackey "repeatedly encouraged" Leydon-Hardy to file a complaint against Ludlow, again, this is not a statement by Leydon-Hardy.  *See*

*id.* ¶ 30.  As a result, the only comment at issue for the defamation and false light claims against Leydon-Hardy is the 2014 complaint to the General Counsel about non-consensual sex.  *Id.* ¶ 32.

### 1.      False Light Invasion of Privacy Claim

Leydon-Hardy's complaint to the General Counsel was not sufficiently public to state a claim for false light invasion of privacy.  *See id.* ¶¶ 31–32.  As discussed above, a statement to one individual is not "public" for a false light cause of action.  *See Matrix Essentials*, 1992 WL 166926, at *2.  However, Ludlow argues that the Illinois "special relationship" exception should apply because Lackey, Slavin, and Bobb were "deeply intertwined" in his employment.  *See* Resp. [35] at 10–11.  As discussed above, Ludlow does not plead that Leydon-Hardy made any statement to Bobb or Lackey in 2014, and any 2012 statements to Slavin or Lackey cannot support a timely claim.  The only comment at issue is the one to Northwestern's General Counsel; therefore, the question is whether the special relationship exception would apply to Ludlow's relationship with the General Counsel.

In *Poulos v. Lutheran Social Services of Illinois, Inc.*, the Illinois First District Appellate Court extended the special relationship exception from the tort of public disclosure of private facts to false light invasion of privacy claims.  728 N.E.2d 547, 555, 312 Ill. App. 3d 731, 245 Ill. Dec. 465 (2000).  That court reasoned that, "the adoption of such an exception is both justified and appropriate in that a disclosure to a limited number of persons may be just as devastating to a plaintiff as a disclosure to the general public."  *Id.* (finding special relationship between teacher-plaintiff and school's chairman of the board of trustees, the body responsible for hiring the school principal and overseeing the school).  In carving out this exception to the publicity requirement for false light claims, the *Poulos* court relied on another appellate decision, *Miller v. Motorola*, which acknowledged that courts have recognized flexibility in the definition

of public in order to permit recovery for "egregious conduct."  *See Miller v. Motorola, Inc.,* 560 N.E.2d 900, 903, 202 Ill. App. 3d 976, 148 Ill. Dec. 303 (1990) (finding disclosure of medical condition to fellow employees sufficiently public).

The Illinois Supreme Court has not yet clarified the definition of "before the public" for the special relationship exception.  *See Poulos*, 728 N.E.2d at 555.  Recently a court in this district analyzed the *Poulos*-special relationship exception and this lack of Illinois Supreme Court guidance.  *See Davis v. Jewish Vocational Serv.,* No. 07 C 4735, 2010 WL 1172537, at *5–6 (N.D. Ill. Mar. 17, 2010).  It determined that without a superseding decision by the state's highest court, the district court was bound by Seventh Circuit precedent, which held that "communications and actions between and among the employees, officers, and directors of the association, who by virtue of their positions would have a natural interest in, if not a responsibility to know about, the matters communicated do not support a false light claim."  *Id.* at *6 (quoting *Frobose v. Am. Sav. & Loan Assoc. of Danville,* 152 F.3d 602, 618 (7th Cir. 1998)).

Prior to this decision, another court in our district examined *Poulos*, explaining:

> Through the special relationship exception, courts have recognized that a disclosure to a limited number of persons may be just as devastating to a plaintiff as a disclosure to the general public. Courts do not apply the special relationship exception (or find "public" disclosure) if private information is disclosed only to those persons who have a natural and proper interest in learning such *true,* albeit highly offensive, private facts.  However, this rule applies only to claims of public disclosure of private facts, and not to claims for false light invasion of privacy.  In other words, there is no such thing as a right to receive false information.  As long as the plaintiff shares a special relationship with those before whom the plaintiff is placed in a false light, the disclosure will be considered sufficiently "public" to satisfy this element of the tort.

*United Labs., Inc. v. Savaiano*, No. 06 C 1442, 2007 WL 4557095, at *10 (N.D. Ill. Dec. 21, 2007) (internal quotation marks omitted) (citations omitted). While the *United Labs.* court reasoned that, under *Poulos*, an employer's "natural interest" would not act to override the special relationship exception, it did not address the Seventh Circuit's holding in *Frobose* that "communications and actions between and among the employees, officers, and directors of the association, who by virtue of their positions would have a natural interest in, if not a responsibility to know about, the matters communicated. . . . would not support a false light claim." 152 F.3d at 618. This Court agrees with the *Davis* court that, without clarification from the Illinois Supreme Court, it is bound to follow Seventh Circuit precedent. *See Davis*, 2010 WL 1172537, at *6 (citing *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("A decision by a state's supreme court terminates the authoritative force of [Seventh Circuit] decisions interpreting state law . . . But decisions of intermediate state courts lack similar force . . . they do not themselves liberate district judges from the force of [Seventh Circuit] decisions." (alterations in original))). Ludlow's false light claim against Leydon-Hardy is based on her complaint to the General Counsel, an individual whose position as chief attorney for Northwestern would give him or her a natural interest in, and indeed responsibility to hear, allegations of this nature against Northwestern employees. *See Frobose*, 152 F.3d at 618. Therefore, the special relationship exception does not apply to Leydon-Hardy's statement and Ludlow has failed to adequately plead Leydon-Hardy's complaint was publicized such that a false light claim is stated.

### 2.    Defamation Claim

Leydon-Hardy seeks dismissal of her claim as made under qualified privilege as part of an investigation into an employee's alleged sexual misconduct. Ludlow argues that qualified

privilege is an affirmative defense and because he has pleaded that Leydon-Hardy's statements were false, he has sufficiently pleaded the abuse of that privilege.

Qualified privilege is an affirmative defense that a plaintiff need not anticipate in his pleading; however, once qualified immunity has been identified, a plaintiff may overcome this challenge at the pleading stage by alleging the statement was made with actual malice—either knowledge of its falsity or in reckless disregard of the truth. *See Morton Grove Pharm., Inc. v. Nat'l Pediculosis Assoc., Inc.*, 494 F. Supp. 2d 934, 942–43 (N.D. Ill. 2007). Leydon-Hardy's statement to the General Counsel is subject to qualified privilege as a statement made to an employer's investigator about alleged employee misconduct. *See Izadifar v. Loyola Univ.*, No. 03 C 2550, 2005 WL 1563170, at *6 (N.D. Ill. June 7, 2005) (qualified privilege applies to statements made to an employer investigating employee misconduct). A student's complaint to her university's general counsel regarding an alleged sexual assault by an employee clearly implicates both her interest in her own safety and the university's interest in student safety and the resolution of claims against its employees. There is also a public interest in the reporting and resolution of such claims. *See United Labs.*, 2007 WL 4557095, at *9 (explaining that under Illinois law, qualified privilege arises in three situations: 1) "situations involving an interest of the publisher of the defamatory statement"; 2) "situations involving an interest of the recipient of the defamatory statement or some other third party"; and 3) "situations involving a recognized public interest").

Ludlow pleads generally that Leydon-Hardy made "false statements during the 2014 investigation. . . . knowing [those statements] were false." Compl. ¶¶ 58, 60. He argues that this is sufficient to meet his burden to allege malice at the pleadings stage. Courts in this district, however, have looked for something more than conclusory statements in order to infer the

defendant knew the statements were untrue or recklessly disregarded the truth or falsity of those statements. *See Morton Grove Pharm.*, 494 F. Supp. 2d at 943 (refusing to dismiss when complaint alleged "requisite intent requirement to plead an abuse of the privilege," which included allegations of defendants "negligently and intentionally" "selectively quoting and/or misstating findings from studies" and "widely disseminat[ing] false, misleading, and defamatory statements" and refusing to retract such statements); *United Labs., Inc.*, 2007 WL 4557095, at *9 (finding allegations that defendant "as part of her plan" made false statements "in a further effort to sullen the name and image of the founders/founding family of United Labs" sufficiently pleaded abuse of privilege); *cf. Gondeck v. A Clear Title & Escrow Exch., LLC*, No. 11 C 6341, 2012 WL 5200091, at *6 (N.D. Ill. Oct. 22, 2012) (rejecting boilerplate malice allegation as insufficient to state a claim for emotional distress). Ludlow does plead that Leydon-Hardy continued her relationship with him after the night in question and the Complaint discusses the "documentary evidence" Ludlow presented to Bobb to prove his innocence. Compl. ¶¶ 32, 34. However, none of these details create any kind of inference related to Leydon-Hardy's state of mind when she reported to the General Counsel that she "drank too much and woke up the next morning believing that Plaintiff had had non-consensual sex with her." *Id.* ¶ 32. Without more, the Court does not find that Ludlow has pleaded an abuse of qualified privilege. Ludlow's defamation claim against Leydon-Hardy is dismissed.

Because the Court has dismissed the defamation and false light claims against Leydon-Hardy on other grounds, it does not address her absolute privilege argument.

## III.    Count VI (Civil Conspiracy)

Ludlow also brings a civil conspiracy claim against all Defendants for "unlawfully conspir[ing] for the purpose of concocting false evidence to support terminating" Ludlow and

"[i]n so conspiring, . . . making false statements of material fact about [Ludlow] and allowing those false statements to be publicized within the University." Compl. ¶ 68. To state a claim for civil conspiracy, Ludlow must plead "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means. *See Coghlan*, 984 N.E.2d at 151. However, "conspiracy is not an independent tort: the conspiracy claim fails if the independent cause of action underlying the conspiracy allegation fails." *Id.*; *see also Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 821–22 (N.D. Ill. 2006) (dismissing state law conspiracy claims because plaintiff failed to state an independent, underlying cause of action). Because Ludlow's Title IX, defamation, and false light claims are dismissed, his civil conspiracy claim must also fail.

## CONCLUSION

For the foregoing reasons, the Motions to Dismiss of Defendants Northwestern, Schapiro, Cubbage, Slavin, Lackey, and Leydon-Hardy [27, 29] are granted. Ludlow is directed to advise the Court at the next status hearing whether he intends to file an Amended Complaint.

Dated: February 5, 2015

_____
SARA L. ELLIS
United States District Judge