**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PETER LUDLOW, | |
| Plaintiff, | Case No. : 14-CV-04614 |
| v. | Honorable Sara L. Ellis |
| NORTHWESTERN UNIVERSITY, ALAN CUBBAGE, individually, LAUREN LEYDON-HARDY. | **Trial by Jury Demanded** |
| Defendants. | |

**FIRST AMENDED COMPLAINT AT LAW**

COMES NOW the Plaintiff, by and through his attorneys, The Case Law Firm LLC, and for his First Amended Complaint at Law against Defendants states and alleges as follows:

**Jurisdictional Statement**

1.      At all relevant times, Plaintiff Peter Ludlow (hereinafter "Plaintiff") was a resident of Chicago, Cook County, Illinois and was a professor in Defendant Northwestern University's Philosophy Department.

2.      Defendant Northwestern University ("Defendant Northwestern") is a university which receives federal funding and which is qualified and doing business in Evanston, Cook County, Illinois.

3.      Defendant Alan Cubbage ("Defendant Cubbage") is a resident of Evanston, Cook County, Illinois and was at all relevant times Vice President of University Relations for Defendant Northwestern.

4.      Defendant Lauren Leydon-Hardy ("Defendant Leydon-Hardy") is a resident of Massachusetts and was at all relevant times a PhD student in Defendant Northwestern's Philosophy Department.

5.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and § 1367.  Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) and (c).

## Background Facts

6.      In February of 2012, a student at Defendant Northwestern, Yoona Ha (hereinafter "Ha"), lodged an internal complaint against Plaintiff asserting numerous false allegations, including that he had made inappropriate sexual advances toward her and that he had sexually assaulted her.

7.      Defendant Northwestern claimed to have investigated the complaint and found that Plaintiff had violated Defendant Northwestern's sexual harassment policy, but concluded that Ha's claims of sexual assault lacked credibility.  Based upon that, the University issued minor sanctions against Plaintiff, but chose not to terminate his employment or to bar him from teaching.

## Defendants Defame Plaintiff

8.      Ha used her accusations against Plaintiff and the threat of a lawsuit against the University to obtain a wealth of favorable treatment including extensions on class assignments, excused absences from class and certain other accommodations that her fellow students did not enjoy.  After the University refused to pay Ha a certain amount of money that she had demanded and grant her free tuition for the rest of her college career, on February 10, 2014, the day the statute of limitations was set to expire, Ha filed a federal lawsuit against Defendant Northwestern

alleging that it discriminated and retaliated against her in violation of Title IX of the Education Amendments Act of 1972 for making her internal complaint of sexual harassment against Plaintiff.

9.      Then, on February 26, 2014, Ha filed a lawsuit in Illinois state court against Plaintiff for an alleged violation of the Gender Violence Act.  Plaintiff filed an Answer, in which he adamantly denied her allegations.

10.      The local and national media reported on Ha's complaint against Plaintiff. Additionally, radical feminist and women's groups planned and held protests on campus and widely distributed calls for Plaintiff's termination. One national woman's group (Know Your IX) met with members of the Northwestern community and assisted in planning actions against the Plaintiff. Many of these protestors accused Defendant Northwestern of supporting a culture of rape and failing to support its female students by failing to "believe the victims."

11.      On March 4, 2012, more than 100 individuals organized by one of the feminist groups protesting Plaintiff's employment planned to disrupt Plaintiff's classes.  In consultation with Defendant Northwestern, Plaintiff canceled that class.   When further protests and disruptions were planned for his remaining classes, Plaintiff and Defendant Northwestern decided that another professor should give the final lectures while Plaintiff continued to grade assignments and supervise students on an individual basis.

12.      Then, on or around March 11, 2014, Stephanie Graham, Defendant Northwestern's legal counsel, asked Plaintiff's counsel if Plaintiff would agree to forego teaching his two classes during the Spring Quarter.   Ms. Graham said that Defendant Northwestern would not remove him from teaching without his agreement and that, if he agreed,

he would continue to be paid and be allowed to continue working on his research, writing and advising responsibilities which were the bulk of his professional responsibilities.

13.     As part of this agreement and out of fear of further media attention, Plaintiff's counsel asked Ms. Graham to agree that Defendant Northwestern would not comment on the decision other than to say that "Professor Ludlow is not teaching spring quarter."  Ms. Graham agreed and guaranteed there would be no such comment.

14.     Based upon Ms. Graham's representations, Plaintiff agreed to forego teaching his two Spring classes.

15.     Despite Ms. Graham's specific guarantees to the contrary, on or around March 12, 2014, Defendants Northwestern and Cubbage, in an attempt to garner positive public relations, made a number of false statements to students and media indicating that the removal of Plaintiff from teaching in the Spring Quarter was done at the behest of the protestors and to punish Plaintiff.

16.     Defendants Northwestern and Cubbage intended these false statements, within the context of the protests and ample media coverage of Ha's complaints, to suggest that Northwestern had taken some sort of punitive action against Plaintiff in response to the protests when it, actually, had taken none.

17.     On March 12, 2014, Defendant Cubbage told reporters with *NBC Chicago* that Defendant Northwestern had placed Plaintiff on a "leave of absence." *NBC Chicago* published that information in an article titled "Accused NU Prof Won't Teach Next Quarter."  Defendant Cubbage later corrected his statement to *NBC Chicago* stating, "It turns out Prof. Ludlow is not on a leave of absence…"

18.     Defendant Cubbage's statement lacks any substantial truth in that Plaintiff was still working for Defendant Northwestern researching and writing.

19.     Defendant Northwestern's Faculty Manual states: "A leave of absence releases a faculty member from on-campus teaching and service responsibilities for a specified period of time." The manual also provides: "A faculty member is not considered to be on leave during a term in which he/she happens not to have any scheduled classroom responsibilities but maintains all educational and service responsibilities, such as advising, departmental administration, committee assignments, and other forms of service. Such a faculty member is considered to be "in residence."

**After learning of Ha's allegations, Defendant Leydon-Hardy lodges her own claims.**

20.     Plaintiff and Defendant Leydon-Hardy had a consensual romantic relationship from approximately October 2011 to January 2012. Defendant Leydon-Hardy was a graduate student. Plaintiff did not supervise her work, assess her grades or have any other evaluative authority over her. Thus, Defendant Northwestern's policies did not prohibit their relationship.

21.     During their relationship, Defendant Leydon-Hardy sent Plaintiff emails and text messages in which she regularly told him that she loved him, was "in love" with him, and missed him when he was away.

22.     Plaintiff and Defendant Leydon-Hardy's relationship ended in January 2012.

23.     Between two to four days after Ha filed her lawsuit against Defendant NU, Defendant Leydon-Hardy told Jennifer Lackey, her academic advisor, that Plaintiff had non-consensual sex with her on one occasion while they were dating. Defendant Leydon-Hardy knew this was not true.

24.     Then, in March of 2014, Ms. Lackey reported Defendant Leydon-Hardy's allegations to Defendant Northwestern.    Defendant Leydon-Hardy then lodged her own complaint, falsely telling University officials, including but not limited to Joan Slavin and Stephanie Graham, that Plaintiff had non-consensual sex with her.

25.     After this, Defendant Northwestern engaged Patricia Bobb, a Chicago-based attorney, to investigate Defendant Leydon-Hardy's claims.

26.     Plaintiff provided Ms. Bobb with documentary evidence which refuted Defendant Leydon-Hardy's allegation including but not limited to a hotel receipt which showed that Plaintiff had stayed at a hotel and was not with the Defendant at the time of the alleged non-consensual encounter as well as text messages from Defendant Leydon-Hardy the day after the alleged non-consensual encounter in which she told Plaintiff that she loved him and in which she said nothing of an alleged incident of non-consensual sex.

27.     Defendant Leydon-Hardly repeated her false allegations of nonconsensual sex to Ms. Bobb but, when faced with text messages between she and Plaintiff after the alleged incident, admitted that she continued dating Plaintiff after the alleged incident, that she had consensual sex with him after that, and that she also persuaded him to take her on a vacation.

28.     During the investigation, Ms. Bobb afforded Defendant Leydon-Hardy many advantages that she did not extend to Plaintiff.  She did this because Ms. Leydon-Hardy is a woman and, following the "believe the victims" mantra, entitled to more opportunities to construct her case.

29.     For instance, during her investigation and without Plaintiff's permission, Ms. Bobb forwarded to Defendant Leydon-Hardy confidential emails Plaintiff had sent her and gave Defendant Leydon-Hardy a chance to refute them.  She did not do the same for Plaintiff and, in

fact, refused to share specifics regarding Defendant Leydon-Hardy's allegations with him which deprived Plaintiff of the ability to respond to them fully. Indeed, Plaintiff was only informed of a specific allegation of nonconsensual sex. When that charge collapsed Ms. Bobb shifted the investigation to other charges without notifying Plaintiff of the new charges, including a charge that he had a supervisory role over Defendant Leydon-Hardy, and ultimately that he had "sexually harassed" her.

30. At the conclusion of her investigation, Ms. Bobb found insufficient evidence to support Defendant Leydon-Hardy's allegation of non-consensual sex.

31. Ms. Bobb also found that Plaintiff had not violated Defendant Northwestern's policy regarding professors and students dating, and that he did not have supervisory authority over Defendant Leydon-Hardy.

32. Despite that, Ms. Bobb nevertheless found that Plaintiff had violated Defendant Northwestern's policy against sexual harassment because, according to Ms. Bobb, he had established "unequal power" by buying her "expensive dinners" and exercising his "charm."

33. Plaintiff alerted Defendant Northwestern to the flawed and legally unsupported nature of Ms. Bobb's conclusions and asked that the report not be publicly distributed within his Philosophy Department and/or the University.

34. Despite his request, the report was distributed to a number of people, including but not limited to Dean Mangelsdorf, Provost Linzer and Sandy Goldberg.

## COUNT I: GENDER DISCRIMINATION IN VIOLATION OF TITLE IX AGAINST DEFENDANT NORTHWESTERN

35. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count I.

7

36.     Defendant Northwestern is an educational institution that receives federal financial assistance.

37.     In the months preceding Defendant Leydon-Hardy's allegations, a number of radical feminist groups were accusing Defendant Northwestern of supporting a "rape culture" which harmed its female students by failing to "believe the victims."

38.     As a result of this outside pressure from radical women's groups, Defendant Northwestern intentionally denied Plaintiff the benefit of a partial and unbiased investigation in applying its own sexual harassment policy to the allegations made against him.

39.     Defendant Northwestern denied Plaintiff his right to a non-discriminatory investigation based upon the fact that he was a male and that it needed to "believe the victim." Defendant Northwestern did this by refusing to consider certain pieces of Plaintiff's evidence in its investigation, in affording Defendant Leydon-Hardy opportunities during the investigation not afforded to Plaintiff, and in refusing to give his evidence the same weight that it gave to Defendant Leydon-Hardy's, and ultimately by interpreting perfectly appropriate male behavior (e.g. being "charming") as an episode of sexual harassment.

40.     Defendant Northwestern engaged in the aforesaid discriminatory acts with malice and with reckless indifference to Plaintiff's federally protected rights under Title IX.

41.     As a direct and proximate result of Defendant Northwestern's acts, Plaintiff has suffered damages including but not limited to professional and personal emotional distress, humiliation, embarrassment and future lost income and benefits.

WHEREFORE, Plaintiff respectfully requests that the Court award him the following relief:

        A.      Enter a finding that Defendant Northwestern intentionally discriminated

against Plaintiff based on his gender in violation of Title IX;

B.      Enter a finding that Defendant Northwestern engaged in the discrimination with malice and reckless indifference to Plaintiff's federally protected rights under Title IX;

C.      Award Plaintiff compensatory damages in an amount to be proven at trial;

D.      Award Plaintiff punitive damages in an amount to be proven at trial;

E.      Award Plaintiff his attorneys' fees and costs; and

F.      Award Plaintiff any such further relief the Court may deem just and equitable.

## COUNT II: DEFAMATION AGAINST DEFENDANTS NORTHWESTERN AND CUBBAGE

42.     Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count II.

43.     Defendant Cubbage's false statement that Plaintiff was on a leave of absence from teaching, when considered in context with the allegations that had been made against Plaintiff, the ongoing public protests against Plaintiff's continued employment at Defendant Northwestern, and Defendant Northwestern's own policies and definition of leave of absence, was defamatory *per se* in that it imputed to Plaintiff a want of integrity in the discharge of his duties and prejudiced Plaintiff and imputed a lack of ability in his trade.

44.     Defendant Cubbage, on behalf of Defendant Northwestern, "published" this false statement by conveying it to an NBC Chicago reporter who published an article containing the false information.

45.     Defendants acted with malice in publicizing this statement knowing it was false and without privilege to do so.

9

46.     As a direct and proximate result of Defendants Northwestern and Cubbage's false and defamatory statements, Plaintiff has suffered lost income, damage to his reputation, emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff respectfully requests that the Court award him the following relief:

A.      Enter a finding that Defendants Northwestern and Cubbage defamed Plaintiff;

B.      Award Plaintiff compensatory damages in an amount to be proven at trial;

C.      Award Plaintiff punitive damages in an amount to be proven at trial; and

D.      Award Plaintiff any such further relief the Court may deem just and equitable.

## COUNT III: FALSE LIGHT INVASION OF PRIVACY AGAINST DEFENDANTS NORTHWESTERN AND CUBBAGE

47.     Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count III.

48.     Defendant Cubbage's false claim that Plaintiff was placed on a "leave of absence" when considered in context with the allegations that had been made against Plaintiff, the ongoing public protests against Plaintiff's continued employment at Northwestern and Defendant Northwestern's own policies and definition of leave of absence, cast Plaintiff in a publicly false and damaging light.

49.     Defendant Cubbage, on behalf of Defendant Northwestern, "published" this false statement by conveying it to an NBC Chicago reporter who published an article quoting the false statement.

50.     The false light in which Defendants' actions placed Plaintiff would be highly offensive to a reasonable person because they suggested that Plaintiff had been punished as a result of Ha's allegations against him and the ongoing protests when he, in fact, had not been.

10

51.     Defendants Northwestern and Cubbage acted with malice and with a reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed.

52.     As a direct and proximate result of Defendants Northwestern and Cubbage's actions, Plaintiff has suffered lost income, damage to his reputation, emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff respectfully requests that the Court award him the following relief:

A.     Enter a finding that Defendants Northwestern and Cubbage publicly placed him in a false and damaging light;

B.     Award Plaintiff compensatory damages in an amount to be proven at trial;

C.     Award Plaintiff punitive damages in an amount to be proven at trial; and

D.     Award Plaintiff any such further relief the Court may deem just and equitable.

## COUNT IV: DEFAMATION AGAINST DEFENDANT LEYDON-HARDY

53.     Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count IV.

54.     Defendant Leydon-Hardy's false accusation that Plaintiff had sex with her without her consent imputed to Plaintiff the commission of a crime and a want of integrity in the discharge of his duties.

55.     Defendant Leydon-Hardy published these statements to Plaintiff's colleagues and other outside people, including but not limited to Plaintiff's colleague, Jennifer Lackey, to Plaintiff's employer, Northwestern University, and to Patricia Bobb, Defendant Northwestern's outside investigator.

56.     Defendant Leydon-Hardy made these statements knowing that they were false and acted with malice in doing so out of personal animosity toward Plaintiff resulting from the breakup of their relationship and her discovery of Ha's claims against him.

57.     As a direct and proximate result of Defendant Leydon-Hardy's false and defamatory statements, Plaintiff has suffered lost income, damage to his reputation, emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff respectfully requests that the Court award him the following relief:

A.      Enter a finding that Defendant Leydon-Hardy defamed Plaintiff;

B.      Award Plaintiff compensatory damages in an amount to be proven at trial;

C.      Award Plaintiff punitive damages in an amount to be proven at trial; and

D.      Award Plaintiff any such further relief the Court may deem just and equitable.

## COUNT V: FALSE LIGHT INVASION OF PRIVACY
## AGAINST DEFENDANT LEYDON-HARDY

58.     Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count V.

59.     Defendant Leydon-Hardy's false statements that Plaintiff had non-consensual sex with her cast Plaintiff in a publicly false and damaging light.

60.     The false light in which Defendant Leydon-Hardy's statement placed Plaintiff would be highly offensive to a reasonable person because it suggests the commission of a violent crime.

61.     Defendant Leydon-Hardy acted with actual malice and with reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed

because she knew her statements were false and she made them anyway, out of a personal animosity toward Plaintiff.

62.     As a direct and proximate result of Defendant Leydon-Hardy's actions, Plaintiff has suffered lost income, damage to his reputation, emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff respectfully requests that the Court award him the following relief:

A.     Enter a finding that Defendant Leydon-Hardy publicly placed him in a false and damaging light;

B.     Award Plaintiff compensatory damages in an amount to be proven at trial;

C.     Award Plaintiff punitive damages in an amount to be proven at trial; and

D.     Award Plaintiff any such further relief the Court may deem just and equitable.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues herein.

PETER LUDLOW


By: /s/  Kristin M. Case
       One of His Attorneys


Kristin M. Case
Kate Sedey
Kendra L. Kutko
The Case Law Firm, LLC
250 South Wacker Dr., Ste. 230
Chicago, Illinois 60606
Tel. (312) 920-0400
Fax (312) 920-0800